# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**JOHN GUTIERREZ**,

               Plaintiff,

    v.

**MICHAEL ASTRUE**, Commissioner
Social Security Administration,

               Defendant.

Case No. 6:11-cv-6318-SI

**OPINION AND ORDER**

Kathryn Tassinari, Harder, Wells, Baron & Manning, P.C., 474 Willamette, Suite 200, Eugene, OR 97401. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 SW Third Avenue, Suite 600, Portland, OR 97201; Matthew W. Pile, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

PAGE 1, OPINION AND ORDER

**SIMON, District Judge.**

Plaintiff John Gutierrez ("Gutierrez") challenges the Commissioner's decision finding him not disabled and denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This Court has jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is reversed and remanded for further proceedings.

## I.    BACKGROUND

### A.    The Plaintiff

Mr. Gutierrez was born in 1962. Tr. 105. (Dkt. 11.) He has a high school education. Tr. 132. He applied for benefits on June 24, 2006, alleging disability since March 1, 2007. Tr. 105. Mr. Gutierrez claims that his disability is due to back and spine conditions, diabetes and related problems, and vision impairment. Tr. 127. The Commissioner denied the applications initially and upon reconsideration. Tr. 63-79. An Administrative Law Judge ("ALJ") held a hearing on June 14, 2010. Tr. 28-62. On July 19, 2009, the ALJ found Mr. Gutierrez to be not disabled. Tr. 13-23. On August 15, 2011, the Appeals Council declined to review the ALJ's decision. Tr. 1-3. This action made the ALJ's decision the final decision of the Commissioner, subject to review by this Court. 20 C.F.R. § 410.670a.

### B.    The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

PAGE 2, OPINION AND ORDER

§ 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, he is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.      The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Mr. Gutierrez had not performed substantial gainful activity since his March 1, 2007, alleged onset date. Tr. 15. At step two, the ALJ found Mr. Gutierrez's borderline intellectual functioning, adjustment disorder with anxious mood, and history of polysubstance abuse to be "severe." *Id.* At step three, the ALJ found that these impairments did not meet or equal a listed disorder. Tr. 17. The ALJ then found that Mr. Gutierrez retained the RFC to perform work at all exertional levels with nonexertional limitations. Tr. 18. Specifically, the ALJ found that Mr. Gutierrez could:

PAGE 4, OPINION AND ORDER

> [P]erform unskilled work (routine, repetitive tasks with simple
> instructions) that do not require contact with the general public or
> more than occasional contact with coworkers and supervisors. The
> claimant would need additional time to learn new tasks and should
> not perform tasks which require teamwork or collaborative effort.
> Tr. 18.

Based upon the Commissioner's regulations and the testimony of a vocational expert, the ALJ

found that Mr. Gutierrez could perform work that existed in significant numbers in the national

economy. Tr. 22-23. At step five, the ALJ found Mr. Gutierrez to be not disabled. Tr. 12.

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,*

554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.

1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.

1982). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment

for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a

reviewing court must consider the entire record as a whole and may not affirm simply by

isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.

2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks

omitted)). The reviewing court also may not affirm the Commissioner on a ground upon which

the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

### III.    DISCUSSION

Mr. Gutierrez asserts that the ALJ: (1) erroneously assessed his credibility; (2) erroneously assessed the opinion of examining psychologist David Northway, Ph.D.; and (3) failed to meet his burden at step five in the sequential proceedings. Consequently, Mr. Gutierrez asserts that he is disabled under the Commissioner's regulations.

### A.    Mr. Gutierrez's Credibility

The ALJ discussed Mr. Gutierrez's credibility throughout his evaluation of his RFC. Tr. 19-21. Mr. Gutierrez challenges the ALJ's findings pertaining to his: (1) compliance with recommended treatment; (2) work history; (3) secondary gain; and (4) daily activities. Pl.'s Opening Br. 14-17.

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility

finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 1. Compliance With Recommended Medical Treatment

The ALJ first noted that "compliance issues exist in the record" and stated that Mr. Gutierrez failed to appear for a diabetes recheck appointment. Tr. 19. The ALJ also described Mr. Gutierrez's failure to follow recommended dietary changes for his diabetes and correctly monitor his insulin. *Id.* Here, the ALJ cited medical records showing that Mr. Gutierrez "continually 'forgot' to take his insulin." *Id.* The ALJ concluded, "[t]hese examples suggest that the claimant has contributed, at least in part, to his ongoing symptoms." *Id.*

Mr. Gutierrez argues that the ALJ failed to consider "two important factors that have impeded" his ability to care for himself or maintain his blood sugar levels. Pl.'s Opening Br. 15. Mr. Gutierrez states that the record shows that he "has had difficulty understanding what is required for diabetic management." *Id.* He also says that his ability to care for himself has been impeded by his "long periods of homelessness and frequent moves from friend to friend." *Id.*

The ALJ may consider a claimant's failure to seek or utilize treatment. 20 C.F.R. §§ 404.1530; 416.930; *Smolen*, 80 F.3d at 1284; Soc. Sec. Ruling 96-7p (available at 1996 WL 374186 at *7). The ALJ must also consider a claimant's explanation for failing to seek treatment and may not chastise a claimant for failing to seek treatment for which he cannot pay. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). The Commissioner's regulations also instruct that the ALJ will consider "physical, mental, educational, and linguistic limitations (including any lack of facility with the English language) when determining if you have an acceptable reason for failing to follow prescribed treatment." 20 C.F.R. §§ 404.1530(c); 416.930(c).

Mr. Gutierrez cites numerous instances in the medical record addressing his inability to understand diabetic diet instructions. Pl.'s Opening Br. 15. For example, Mr. Gutierrez's primary care physician stated that he "just did not learn correctly" to use his glucose meter (Tr. 205) and that he made erroneous adjustments to his insulin dose. Tr. 189. Mr. Gutierrez could not remember instructions regarding carbohydrates in his diet, and "has not been paying attention to his food." *Id.* A diabetes educator expressed some doubt that Mr. Gutierrez understood her instructions regarding carbohydrates. Tr. 386.

Mr. Gutierrez also cites Dr. Northway's report, which states, "[o]n measures of auditory attention or working memory for material presented in the auditory modality, [Mr. Gutierrez] was at the 2nd percentile in the severely impaired range. He clearly struggled more with tracking information presented to him verbally." *Id.* (citing Tr. 257). The ALJ gave "significant weight" to Dr. Northway's opinion that, among other things, Mr. Gutierrez would "require extra time to learn, understand and remember new information." Tr. 20. Dr. Northway's report clearly shows that Mr. Gutierrez may have difficulty understanding instructions, and this is corroborated by the medical evidence just discussed.

The ALJ failed to consider the mental and linguistic limitations of Mr. Guitierrez before faulting him for failing to understand and follow instructions regarding diabetic management techniques. Consequently, the ALJ's finding that Mr. Gutierrez is discredited by his failure to follow treatment is not sustained.

### 2.  Work History

The ALJ cited Mr. Gutierrez's work activity at St. Vincent DePaul in June 2008, and his earnings of $6,418 in "the first two months" of 2007. Tr. 19. The ALJ also cited Mr. Gutierrez's

testimony that he stopped working because his back hurt.  The ALJ also concluded that Mr. Gutierrez did not cite mental or cognitive reasons for stopping work. *Id.*

Mr. Gutierrez, however, states that he explained during his hearing testimony that he was fired for making a "smart ass" comment in the workplace and that he lost jobs due to his anger and emotional responses in the workplace. Pl.'s Opening Br. 16. The record confirms that Mr. Gutierrez gave this testimony during the hearing. Tr. 38. The ALJ's finding that Mr. Gutierrez did not cite mental impairments as a reason for ceasing work is therefore unsupported by the record.

The Commissioner responds that the harmless error doctrine applies to the ALJ's error in this matter. Def.'s Br. 7. An error is harmless when an ALJ's decision "remains legally valid" despite the error, and the ALJ's remaining reasoning and determination of the disputed issue is "adequately supported by substantial evidence in the record." *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008). The ALJ's credibility analysis, however, contains several errors. For the reasons discussed below, the ALJ's ultimate decision cannot be sustained. For this reason, the Court declines to find harmless the ALJ's omission regarding Mr. Gutierrez's work activity.

### 3.  Secondary Gain

The ALJ stated that "secondary gain issues may also be present" and cited Mr. Gutierrez's report of an eviction notice and financial stress. Tr. 19. The ALJ concluded, "the claimant could be attempting to portray more extensive limitations than are actually present in order to increase the chance of obtaining benefits." *Id.*

Mr. Gutierrez argues that this finding inappropriately relied upon secondary gain as a reason for finding him not credible. Pl.'s Opening Br. 16-17. The ALJ may not chastise a disability claimant for applying for benefits. *Ratto v. Chater*, 839 F.Supp. 1415, 1428 (D. Or.

1993). The ALJ's comments regarding "secondary gain issues" and "attempting to portray more extensive limitations than are actually present," however, refer to secondary gain.

The Commissioner repeats the ALJ's statement and concludes that Mr. Gutierrez incorrectly interprets it. Def.'s Br. 8. The Commissioner's indicated citation discusses an ALJ's credibility analysis and supports an ALJ's use of medical evidence, a claimant's daily activities, and a claimant's use of nonprescription pain medication. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998). After this conclusion, the court commented: "The ALJ noted that '[the claimant's] efforts to receive disability benefits more credibly come from the stressful living situation she described to [her physician]' Hence, the ALJ articulated several specific, clear, and convincing reasons for partially rejecting [claimant's] pain testimony." *Id.* This authority, however, does not hold that an ALJ may cite secondary gain, without more, in order to discredit a claimant. The Commissioner's argument therefore is rejected, and the ALJ's findings on this matter are not sustained.

### 4. Activities of Daily Living

The ALJ discussed Mr. Gutierrez's activities of daily living:

> [T]he claimant can perform a full range of daily activities, which is inconsistent with the nature, severity and subjective complaints of the claimant. The claimant could ride public transportation unassisted. The claimant reported going for long bike rides and being more physically active. These activities do not reflect the disabling limitations alleged by the claimant. Tr. 20 (internal citations omitted).

Mr. Gutierrez challenges this analysis, but offers no legal authority, instead asserting that his physical condition "is not the primary impediment to his ability to work" and that he rarely performs chores and associated activities. Pl.'s Opening Br. 17.

Mr. Gutierrez initially alleged disability due to back pain and diabetes and did not cite mental or nonexertional impairments. Tr. 127. On appeal, however, Mr. Gutierrez indicated symptoms pertaining to mental impairments. He wrote, "I do not want to be talked to or touched. I think a lot about past traumatic events. I have a bad memory for everyday things. I do not want to talk to people." Tr. 141. He also wrote, "I sleep a lot. But I fix meals for myself and children. I basically just like to be alone a lot." Tr. 144.

At his hearing, Mr. Gutierrez testified that he was fired because he "let my emotions take over," and was "very impatient, very angry" at his last job. Tr. 38. He stated that he felt "like I'm not really there mentally" due to his diabetes. Tr. 40. He also testified that he is depressed and has been "like a hermit or something." Tr. 44. This evidence, in its totality, establishes that Mr. Gutierrez alleged disability at his hearing before the ALJ in part due to mental or nonexertional limitations.

Although the ALJ may cite a claimant's activities of daily living in his credibility analysis, *Smolen*, 80 F.3d at 1284, a claimant need not "vegetate in a dark room." *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). This Court must defer to an ALJ's interpretation of a claimant's daily activities where reasonably based upon the record, even where alternate interpretations more favorable to the claimant arise. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ must, however, correlate his credibility reasoning to the claimant's alleged complaint. *See Dodrill*, 12 F.3d 918 (holding that the ALJ must state which pain testimony is not credible and identify evidence supporting this finding). Here, the ALJ cited Mr. Gutierrez's physical activities as a reason to discredit his symptom testimony relating to mental impairment. Because this reasoning does not correlate to Mr. Gutierrez's alleged limitations stemming from his mental impairments, it is not sufficiently specific, and thus, not sustained.

PAGE 12, OPINION AND ORDER

In summary, the ALJ erroneously relied upon an improper findings regarding Mr. Gutierrez's alleged failure to follow treatment, work history, alleged motive of secondary gain, and activities of daily living. Therefore, the ALJ's credibility determination is not sustained. The effect of this error is discussed below.

**B.     The Opinion of Examining Psychologist David Northway, Ph.D.**

Mr. Gutierrez also challenges the ALJ's findings pertaining to examining psychologist David Northway, Ph.D. Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician, and in turn give greater weight to an examining physician's opinion than that of a reviewing physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If two medical source opinions conflict, however, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830.

Dr. Northway evaluated Mr. Gutierrez in July 2008, conducting a clinical interview and neuropsychological testing. Tr. 255-62.  Dr. Northway assessed anxiety disorder "with significant features of post-traumatic stress disorder," adjustment disorder with depression, a pain disorder, and a rule-out diagnosis of cognitive disorder "probably secondary to multiple head traumas." Tr. 261. He also completed a "mental residual functional capacity report" on October 3, 2008. Tr. 255, 263, 265.[1] Dr. Northway indicated that Mr. Gutierrez had "markedly" limited ability to: (1) understand and remember detailed instructions (Tr. 265); (2) maintain extended attention and concentration; (3) work in proximity to others without being distracted; (4) interact appropriately with the general public; (5) "get along with coworkers or peers without

---

[1] This document is presented in the record out of order.

distracting them or exhibiting behavioral extremes;" and (6) get along with coworkers without distracting them. Tr. 255.

Dr. Northway's opinion is the only treating or examining opinion discussed in the ALJ's RFC analysis. The ALJ described Dr. Northway's report at considerable length (Tr. 20-21) and gave "significant weight to the majority of [Dr. Northway's] assessment." Tr. 21. The ALJ noted Dr. Northway's diagnostic impression and specifically commented that Dr. Northway found Mr. Gutierrez "markedly limited in his ability to [understand and remember] detailed instructions, maintain attention and concentration for extended periods, work in close proximity to others, complete a normal workday, interact appropriately with the general public and get along with coworkers." Tr. 20. The ALJ, however, also questioned the relevance of Dr. Northway's opinion as it pertained to the period during which Mr. Gutierrez performed substantial gainful activity in 2002, 2003, 2006, and 2007. Tr. 21 (citing Tr. 122).

Mr. Gutierrez alleges that the ALJ erroneously: (1) referenced Mr. Gutierrez's work history in relationship to Dr. Northway's opinion; (2) rejected Dr. Northway's statement that he was unlikely to improve; and (3) did not address Dr. Northway's finding of "marked" mental impairments. Pl.'s Opening Br.17-18. Mr. Gutierrez also argues that these errors caused error in steps two and four. *Id.* at 18.

### 1.  Dr. Northway's Opinion and Mr. Gutierrez's Work History

The ALJ noted:

> Dr. Northway's assessment concerning the claimant's application
> for disability benefits is inconsistent with the claimant's ability to
> work at the substantial gainful activity level preceding his alleged
> onset date, in 2002, 2003 and 2006 and in 2007, his earnings were
> substantial. This suggests that Dr. Northway may have overstated
> some of the claimant's limitations and understated the claimant's
> ability to work. Therefore, I assign little weight to his comments
> about disability benefits. Tr. 21.

Dr. Northway observed, "apparently Mr. Gutierrez is applying for social security disability at this time as well." Tr. 255. Dr. Northway concluded, "Mr. Gutierrez should be encouraged to apply for social security disability. It appears his combination of a learning disability, other cognitive limitations, and psychological problems would probably qualify him for disability status." Tr. 261.

Dr. Northway's comments are speculative. Further, disability determinations are for the Commissioner to make. 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1). The ALJ need only give "specific and legitimate" reasons for rejecting an examining physician's contradicted opinion. *Lester*, 81 F.3d at 830-831 (citing *Andrews*, 53 F.3d at 1043). No other physician of record suggests that Mr. Gutierrez "would qualify" for "disability status." The ALJ's reference to Mr. Gutierrez's earnings record ("Ex. 6D" at Tr. 122) is thus sufficiently specific. Mr. Gutierrez fails to establish error on this point.

### 2. Dr. Northway's Prognosis

Dr. Northway completed a mental residual capacity form. At the bottom, next to a line labeled "prognosis," Dr. Northway wrote "not likely to improve." Tr. 255. The ALJ gave this opinion "little weight because Dr. Northway did not base this conclusion on any objective information or the results of prior treatment, as indicated by the absence of psychological treatment in the record and [reviewing physician] Dr. Kennemer's opinion . . . ." Tr. 21.

Mr. Gutierrez now argues that Dr. Northway's prognosis is "well-supported by extensive testing" and that Dr. Northway opined that Mr. Gutierrez would respond poorly to therapy. Pl.'s Opening Br. 18. The ALJ may reject physician opinions that are brief, conclusory, or unsupported by clinical notes or findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Dr. Northway based his opinion upon a clinical interview and testing. Tr. 255-62.

PAGE 15, OPINION AND ORDER

Dr. Northway also wrote, "Mr. Gutierrez presented . . . information about himself without corroboration" and therefore cautioned that his opinion that followed "could contain significant historical inaccuracies." Tr. 255. The ALJ's finding that Dr. Northway's opinion was not based on review of Mr. Gutierrez's longitudinal treatment is consistent with Dr. Northway's own comment regarding the lack of historical corroboration. The ALJ's reason is identifiable and sufficiently specific. Mr. Gutierrez therefore fails to establish error on this point.

### 3.  "Marked" Mental Impairments

Mr. Gutierrez argues that the ALJ did not address Dr. Northway's assessment of "several 'marked' mental impairments." Pl.'s Opening Br. 18. Mr. Gutierrez does not explain the ramification of this alleged error, nor what impairments he addresses. *Id.*

As noted, the ALJ cited Dr. Northway's finding of "marked" limitation in Mr. Gutierrez's ability to understand and remember detailed instructions, maintain extended attention and concentration, work in close proximity to others, complete a normal workday, interact with the public, and get along with coworkers. Tr. 20. The ALJ gave "significant weight to the majority of this assessment" and did not explicitly exclude any of these limitations from his findings addressing Dr. Northway's opinion. Tr. 21. The record shows that Dr. Northway's report and the associated mental RFC form do not endorse additional "marked" limitations. Tr. 255-65. The Court declines to disturb the ALJ's findings regarding Dr. Northway's assessment of "marked" impairments.

### 4.  Steps Two and Four

Finally, Mr. Gutierrez argues that the ALJ "erred in failing to credit Dr. Northway's diagnoses, causing him to omit disabling limitations at Steps Two and Four of the sequential analysis." Pl.'s Opening Br. 18. Mr. Gutierrez provides no further explanation for this assertion.

To establish error at step two, a claimant must show that the improperly omitted impairment was not discussed at subsequent steps in the sequential analysis. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2001). Because Mr. Gutierrez makes no such showing regarding Dr. Northway's opinion, this argument is not sustained.

Step four errors pertain to a claimant's ability to do his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv);416.(a)(4)(iv). The ALJ resolved step four in Mr. Gutierrez's favor, finding that he could not perform his past work (Tr. 22), and Mr. Gutierrez makes no argument relating to this analysis. There is therefore no error at step four.

In summary, the ALJ's analysis of Dr. Northway's opinion sufficiently cited Mr. Gutierrez's work history and prognosis. Mr. Gutierrez has failed to establish that the ALJ erred regarding Dr. Northway's endorsement of "marked" impairments or in the ALJ's findings at steps two and four of the sequential analysis.

**C.     The ALJ's Step Five Findings**

Mr. Gutierrez also argues that the ALJ erred at step five in the sequential proceedings. Pl.'s Opening Br. 18. At step five in the sequential proceedings, the ALJ determines if the claimant can perform work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). The ALJ may draw upon a vocational expert's testimony to show that a claimant can perform such work. 20 C.F.R. §§ 404.1566(d-e); 416.966(d-e). The ALJ's questions to the vocational expert, however, must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

Mr. Gutierrez first asserts that the ALJ's finding that Mr. Gutierrez has "moderate difficulties" in social functioning and concentration, persistence and pace (Tr. 17-18) was not reflected in the ALJ's hypothetical question presented to the vocational expert, which included a

limitation to unskilled, simple work. Pl.'s Opening Br. 19. In support of this argument,

Mr. Gutierrez relies upon decisions from the Third, Seventh, and Eleventh Circuits. *Id.* The

Ninth Circuit, however, holds that no such distinction arises as a matter of law; legal error occurs

only if relevant medical evidence points to inconsistencies between "simple" and other

limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008). Because

Mr. Gutierrez does identify any specific limitations assessed by medical providers on this issue

or establish that such limitations were improperly omitted by the ALJ, Mr. Gutierrez fails to

establish error under applicable Ninth Circuit precedent.

Mr. Gutierrez also asserts that the ALJ failed to address whether a moderate limitation in

social functioning would affect his ability to respond to supervision. Pl.'s Opening Br. 19. He

provides no legal basis for such a distinction. He points neither to evidence in the record nor to

any legal authority on this point. He therefore fails to establish error.

Mr. Gutierrez also argues that, according to reviewing physician Dr. Kennemer,

Mr. Gutierrez may need an "understanding and supportive" supervisor and that such

accommodation "may or may not be possible in competitive employment." Pl.'s Opening Br. 19.

This submission is speculative. The record shows Dr. Kennemer stated that Mr. Gutierrez

"would do best with an understanding and supportive supervisor." Tr. 371. The ALJ noted this

recommendation but neither accepted nor rejected it. Tr. 21. Mr. Gutierrez does not challenge the

ALJ's evaluation of Dr. Kennemer's opinion and therefore fails to establish that the ALJ

erroneously omitted any other limitation assessed by Dr. Kennemer at step five in the sequential

analysis.

Finally, Mr. Gutierrez asserts that Dr. Northway's opinion establishes disability at step

five because Dr. Northway found him limited in spelling and arithmetic. Pl.'s Opening

Br. 19-20. Mr. Gutierrez, however, fails to establish error in the ALJ's evaluation of Dr. Northway's opinion for the reasons explained above.

### D.     Remand

As explained above, the ALJ erred in his consideration of Mr. Gutierrez's testimony. The decision whether to remand for further proceedings or for the purpose of directing the immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The Court may not, however, award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits should be directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348 (*en banc*)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

As explained above, the ALJ's decision pertaining to Mr. Gutierrez's testimony is legally erroneous. Neither party asserts that the record requires development. The matter therefore turns upon whether the disputed evidence, if credited, points to a finding of disability. Mr. Gutierrez's submissions to this Court do not specifically identify what portions of his testimony establishes disability. The record shows that Mr. Gutierrez testified that he requires help writing letters and often does not understand what he is reading. Tr. 35. He said he is "not very sociable" and was fired for being angry on the job. Tr. 37-38. Mr. Gutierrez testified that he has lower back pain (Tr. 38-39, 42), but that sitting does not bother him. Tr. 42. He said that he "would feel like I would faint" due to his diabetes. Tr. 40. This happens two to three times a week, and at these times he must sit down, eat, and relax. Tr. 41. Finally, Mr. Gutierrez stated that he is "indoors a lot. Like a hermit or something" and wants to be left alone. Tr. 44.

The ALJ asked the vocational expert to consider a claimant with "a possible learning disorder as well as possible cognitive limitations" who has "a hard time learning, understanding and remembering new tasks" and cannot work in a team. Tr. 57-58. The vocational expert responded that such an individual could perform work in the national economy as a small products assembler, packing line worker, or bagger. Tr. 58. Mr. Gutierrez therefore has not established error regarding his literacy or cognition as described in his testimony.

The vocational expert also testified that an individual prone to temper outbursts in the workplace in response to supervision would be unable to sustain employment. Tr. 60. Mr. Gutierrez, however, did not testify that he cannot tolerate supervision; he testified that he was "getting angry" in the workplace and could "say something foolish." Tr. 38. Mr. Gutierrez's counsel asked the vocational expert to consider an individual who made "inappropriate

statements" in response to supervision, and the vocational expert responded that such an individual would not be able to perform work in the national economy. Tr. 60.

The Court, however, cannot credit a claimant's limitations that are unsupported by vocational expert testimony based on record evidence. *See Harman*, 211 F.3d at 1180**.** Because the evidence presented by the vocational expert regarding inappropriate supervision is incongruent with Mr. Gutierrez's description of his workplace outbursts due to anger, Mr. Gutierrez has failed to show that there would be no useful purpose in additional administrative proceedings.  Finally, neither the ALJ nor Mr. Gutierrez's counsel asked the vocational expert to consider a claimant limited by sporadic episodes of feeling faint. As explained above, the Court is restricted from crediting a claimant's testimony that is unsupported by a vocational expert's testimony. *Id*. The Court therefore declines to credit this testimony and direct the immediate payment of benefits. For all of these reasons, Mr. Gutierrez's testimony does not establish that he is disabled at step five in the sequential proceedings.

## IV.    CONCLUSION

The ALJ's findings regarding the credibility of Mr. Gutierrez is not sustained. The ALJ's decision is reversed and remanded for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four. Upon remand, the ALJ must properly address the credibility issues associated with Mr. Gutierrez's testimony, develop an appropriate RFC, and, if necessary, obtain additional vocational expert testimony in order to make properly supported findings at steps four and five of the sequential disability analysis.

**IT IS SO ORDERED**.

DATED this 2nd day of January, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 21, OPINION AND ORDER